CULLEN, Ch. J., GRAY, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.

---

HARRIET M. PARISH, Appellant, *v.* THE ULSTER AND DELAWARE RAILROAD COMPANY, Respondent.

1. RAILROADS — MILEAGE BOOKS — ERROR IN PREFIX TO NAME OF OWNER — WHEN CONDUCTOR NOT JUSTIFIED IN REFUSING TO HONOR BOOK AND EJECTING OWNER FROM TRAIN. A railroad company issued mileage books which contained a provision that, during certain specified months in the year the book was good only for the person in whose name it was issued. An agent of the company, at the request of plaintiff's husband, issued a mileage book in her name, and with her initials, but, through the agent's error, the prefix Mr. instead of Mrs. was placed before her name. Thereafter and during the months in which the book was available only for the passage of the owner thereof, the plaintiff presented her book for passage on one of the defendant's trains. The conductor refused to receive it, and though the plaintiff explained to him that it was her ticket and that the prefix was a mistake on the part of the company's agent, the conductor ejected her from the train on her refusal to pay fare. She thereupon wrote to the general passenger agent of the defendant complaining of her removal from the train and the manner thereof, and fully stated the circumstances attending the issue of the ticket. Thereafter she received a reply from that official suggesting that she send the ticket to his office for correction. This she declined to do, and on her again seeking passage on a train and tendering her mileage book, it was again refused by the same conductor and she was again ejected from the train. In an action to recover for such expulsions, *held,* that it cannot be said as matter of law that upon its face the book did not authorize the plaintiff to ride upon it, since the designation Mr. or Mrs. was a mere matter of courtesy and no part of the name of the person to whom the ticket was issued; that in any event a dismissal of the complaint was erroneous where there was evidence tending to show that the conductor personally knew the plaintiff

23

and by inquiry might have found out whether the person whose name was at the foot of the book was a man or a woman and it plainly appeared that prior to the time of the second expulsion both the officers of the defendant and the conductor knew that the ticket belonged to the plaintiff.

2. WHEN RAILROAD CORPORATION WITH ROAD MORE THAN 100 MILES IN LENGTH, FORMED BY CONSOLIDATION OF SEVERAL COMPANIES WHOSE ROADS WERE LESS THAN THAT LENGTH, WITHIN PROVISIONS OF MILEAGE BOOK ACT. It appearing in such action that the defendant corporation was organized after the passage of the Mileage Book Act, as a result of the consolidation of the roads of several companies, none of which exceeded 100 miles in length, and that the length of the roads of the consolidated corporation exceeded that distance, the provision of the Mileage Book Act that any corporation operating a railroad in this state, the line or lines of which exceed 100 miles in length, shall issue mileage books which shall entitle the holder or any member of his family to travel thereon, are applicable thereto, unless it is exempted by the statutes under which the consolidation was effected. While the Mileage Book Act was inapplicable to the several corporations before consolidation, and although section 72 of the Railroad Law (L. 1890, ch. 565) provides that "all the rights, privileges, exemptions and franchises of each of the corporations (so consolidated) * * * shall be taken and deemed to be transferred to and vested in such new corporation," the inapplicability of the Mileage Book Act to the several corporations constituting the defendant corporation, before consolidation, because none of their roads was more than 100 miles in length, is in no sense a right, privilege or exemption which can be transferred to the new corporation formed by the consolidation of the several companies.

3. WHEN OWNER OF MILEAGE BOOK NOT BOUND BY LIMITATIONS AND RESTRICTIONS THEREIN NOT AUTHORIZED BY STATUTE. A contention that though the defendant did issue mileage books, it incorporated therein certain conditions and restrictions, and that while the plaintiff might have insisted upon obtaining, on the issue to her of a mileage book, the privileges accorded to the holder thereof by the terms of the statute and sued for the statutory penalty in case it was refused, nevertheless, by accepting the ticket so issued she became bound by its limitations and restrictions, cannot be sustained. The company received the full price of the mileage book as fixed by the statute, and, therefore, there was no consideration for any agreement by the plaintiff to limit its use to a greater extent than prescribed by the law. If the mileage book was available by any member of the family of the holder, the plaintiff's sex was no indication that she was not entitled to use it even if it had been issued to a man, and the defendant was without justification in refusing to honor it.

*Parish* v. *Ulster & Delaware R. R. Co.*, 113 App. Div. 894, reversed.

(Argued May 25, 1908; decided June 12, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 10, 1906, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. H. Johnson* for appellant. The defendant was bound to issue to this plaintiff a mileage book or ticket for 500 miles on payment or tender of ten dollars, and defendant had no right to impose any conditions, except such as are prescribed in the act of 1895 and subsequent amendments thereto. (3 Cumming & Gilbert's Gen. Laws, 3197, 3198.) The provisions appearing upon the face of the book, that " During the months of June, July and August it is good *only* for the person in whose name it is issued, and shall be taken up and forfeited if presented by any other person," are and were absolutely void and are of no force or effect whatever. (*Trolan* v. *N. Y. C. R. R. Co.*, 31 App. Div. 320 ; *Horton* v. *E. R. R. Co.*, 65 App. Div. 587.) The respondent's contention that it was not subject to the provisions of the " Mileage Book Law," because it was the organized or consolidated result of four other corporations respectively created and in existence prior to the passage of the act of 1895, is unsound, and is contrary to the reason and the law of the case. (*Minor* v. *E. R. R. Co.*, 171 N. Y. 566.)

*Lewis E. Carr* and *Amos Van Etten* for respondent. The ticket the plaintiff presented to the conductor on the two occasions mentioned in the complaint did not entitle her to ride and the conductor was justified in requiring her to leave the train unless she paid her fare or presented some other ticket than the one she did present. (*Monnier* v. *R. R. Co.*, 175 N. Y. 281; *Mosher* v. *S. I., etc., R. R. Co.*, 127 U. S. 390; *Boylan* v. *H. S. R. R. Co.*, 132 U. S. 146; *N. Y., L. E. & W. R. R. Co.* v. *Bennett*, 50 Fed. Rep. 496; *Bradshaw* v. *S. B. R. R. Co.*, 135 Mass. 407; *Frederick* v. *M. H.*

*& O. R. R. Co.*, 37 Mich. 342; *Pease* v. *D., L. & W. R. R. Co.*, 101 N. Y. 367; *Scott* v. *C. P., etc., R. R. Co.*, 53 Hun, 414; *N. C. R. R. Co.* v. *Olds*, 40 Ill. App. 421.) The Mileage Book Act, chapter 1027, Laws of 1895, is unconstitutional as to the Ulster and Delaware Railroad Company, and the provisions of that act cannot be made use of to aid the plaintiff's case. (*Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 162 N. Y. 230; *L. S., etc., Co.* v. *Smith*, 173 U. S. 684; *People ex rel. Schurz* v. *Cook*, 110 N. Y. 443; *Parker* v. *E., etc., Co.*, 165 N. Y. 274.)

Cullen, Ch. J. The action is brought to recover damages for the unlawful expulsion of the plaintiff on two separate occasions from the defendant's trains on which she was a passenger. At the time of these occurrences the defendant issued mileage books good for five hundred miles. By the contract printed in the book the ticket was good only for the person in whose name it was issued, but this provision was modified by the further one: " It will be good for use of family of the person named hereon from September 1st to June 1st only. During months of June, July, and August section 1 (that first quoted) will apply." The plaintiff was aware that according to the limitations prescribed in the ticket she could not use her husband's ticket during the three summer months and, therefore, had her husband obtain from the local passenger agent a mileage book for her individually. He stated the plaintiff's name and asked that the ticket be made out to H. M. Parish. It was issued accordingly. On the ticket was a blank for the name of the person to whom the ticket was issued and for the residence of such person. Before the name there was a capital " M " apparently to be followed in script by the letter " r " or the letters " rs " or " iss," depending on the sex and condition of the holder. In this case " r " alone was written after the capital " M," " s " being omitted, and that omission has caused the whole controversy between these parties. The plaintiff testified that on the 6th of August, 1902, she boarded the defendant's

train at Hobart and presented her ticket to the conductor, who refused to accept it; that she explained to the conductor that it was her ticket and that the prefix of "Mr." instead of "Mrs." was a mistake on the part of the defendant's agent. Nevertheless, the conductor, on the plaintiff refusing to pay her fare, ejected her from the train. The next day the plaintiff wrote to the general passenger agent of the defendant at Oneonta a letter complaining of her removal from the train and also of the discourteous conduct on the part of the conductor and stated fully the circumstances attending the issue of the ticket. To this letter the agent replied that if the ticket bore the name Mr. H. M. Parish the conductor had no right to honor it, adding : " Therefore so far as that part of the case is concerned you are entirely at fault, and in order to avoid further trouble you should have the ticket sent to this office for correction." The plaintiff refused to comply with the demand that the ticket be sent to the defendant's office, which was at some distance from the place where she lived, giving as a reason that she had heard of a ticket being sent there and not returned. On August 23rd she again sought passage on the train, and on tendering the ticket it was again refused by the same conductor. The plaintiff said to him that by this time he must know that it was her ticket, to which he replied that she ought to have sent the ticket back ; that the agent of the company wrote her about it, and that it was " sheer contrariness " on her part. Thereupon the plaintiff was again put off the train. At the close of the plaintiff's evidence the complaint was dismissed and the judgment entered on the decision at the Trial Term has been affirmed by the Appellate Division.

The plaintiff recovered on the first trial of this action, but the judgment was reversed by the Appellate Division (99 App. Div. 10). On the second trial the case was disposed of in accordance with the opinion rendered on the first appeal. The decision of the Appellate Division was founded on the case of *Monnier* v. *N. Y. C. & H. R. R. R. Co.* (175 N. Y. 281). In the *Monnier* case a passenger entered a train without having procured a ticket. The conductor demanded

from him the extra five cents allowed by statute where a ticket is not procured at the station. As a condition for exacting this additional fare the statute required that the ticket office should be open for a period at least an hour prior to the departure of the train. (Laws of 1857, ch. 228.) The passenger stated that the ticket office had not been open for the required period and refused to pay the sum demanded. Thereupon he was ejected. It was held that the conductor could have no knowledge on the subject, that he was not bound to accept the passenger's statement, and that as *prima facie* he was entitled to exact the additional five cents, the passenger should have complied with the conductor's demand, obtaining as his redress the penalty prescribed by statute for exacting an excessive fare. While some expressions may be found in one of the opinions rendered for the majority of the court that a passenger must comply with the demands of the conductor, seeking redress subsequently by appropriate action, only three judges concurred in that opinion. The three judges who dissented held that the passenger was justified in his refusal, and that his expulsion was unlawful. The remaining judge of the court expressed his concurrence in the general doctrine stated by the minority, but denied its application to the case then before the court solely on the ground that the conductor was necessarily ignorant of the facts and was justified in acting on appearances. The Appellate Division has said : " It seems too clear for discussion that upon its face the book did not authorize her to ride upon it." I am not inclined to concur in that view, at least, unqualifiedly. The designation " Mr." or " Mrs." was a mere matter of courtesy and no part of the name of the person to whom the ticket was issued. Conceding, however, that without any other knowledge on the subject the conductor would be justified in assuming that the ticket had been issued to a man, the testimony of the plaintiff tended to show that the conductor personally knew her and by inquiring he might have found out whether H. M. Parish, whose signature was at the foot of the book, was a man or a woman. But whatever may be the case as to

the first expulsion, it is plain that prior to the time of the second both the officers of the defendant and the conductor knew that the ticket presented was that of the plaintiff, and had determined to force the plaintiff to comply with their direction to return the ticket to the general office. Therefore, the very foundation of our decision in the *Monnier* case, that the conductor did not know and could not know the rights of the passenger, is wanting in the present case. The blunder in the form of the ticket was that of the defendant, not of the plaintiff, and the requirement that she should send that to the general office of the defendant for correction was unreasonable, or, at least, the jury might have so found. If it was advisable to correct the ticket so as to prevent its being used by a man, the company could have instructed its local agent or the conductor to make the necessary change.

Moreover, if the defendant was at the time within the provisions of the Mileage Book Act its justification wholly fails. That statute prescribes, that any corporation operating a railroad in this state the line or lines of which exceed one hundred miles in length, shall issue mileage books for either one thousand or five hundred miles which shall entitle the holder thereof or any member of his family to travel thereon. (Laws of 1895, ch. 1027, as amended Laws of 1896, ch. 835 ; Laws of 1897, ch. 484 ; Laws of 1898, ch. 577.) The defendant was organized in 1901 as the result of a consolidation of the roads of several companies. These acts were unconstitutional and inoperative as to corporations formed prior to their enactment (*Beardsley* v. *N. Y., L. E. & W. R. R. Co.*, 162 N. Y. 230), but constitutional and controlling as to corporations organized subsequent to that period. (*Minor* v. *Erie R. R. Co.*, 171 N. Y. 566.) The corporation which was formed by the consolidation of several corporations was a new corporation. (*Miner* v. *N. Y. C. & H. R. R. R. Co.*, 123 N. Y. 242.) The roads of none of the corporations from the consolidation of which the defendant was formed exceeded in length one hundred miles. Therefore, none of them came within the provisions of the Mileage Book Act ; but the roads of the

consolidated corporation, the defendant, do exceed one hundred miles, and it is, therefore, subject to the provisions of those acts unless it is exempted therefrom by the statute under which the consolidation was effected. Section 72 of the Railroad Law provides: " Upon the consummation of such act of consolidation all the rights, privileges, exemptions and franchises of each of the corporations (so consolidated) * * * shall be taken and deemed to be transferred to and vested in such new corporation." The inapplicability of the Mileage Book Acts to the several corporations before consolidation, because none of their roads was more than one hundred miles, was in no proper sense a right, privilege, exemption or franchise of the corporation. (*Minor* v. *Erie R. R. Co., supra.*) It is contended, however, that though the defendant did issue mileage books, it incorporated therein certain conditions and restrictions; that while the plaintiff might have insisted upon the issue to her of a mileage book, with the privileges accorded to the holder thereof by the terms of the statute and sued for the statutory penalty in case it was refused, nevertheless, by accepting the ticket so issued she became bound by its limitations and restrictions. We think not. The company received the full price of the mileage book as fixed by the statute, and, therefore, there was no consideration for any agreement by the plaintiff to limit its use to a greater extent than prescribed by the law. If the mileage book was available by any member of the family of the holder, of course, the plaintiff's sex was no indication that she was not entitled to use it even if it had been issued to a man.

The judgment appealed from should be reversed and a new trial ordered, costs to abide the event.

GRAY, HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur; CHASE, J., not sitting.

Judgment reversed, etc.