In the Matter of the Application of the CITY OF NIAGARA FALLS, Respondent, for a Writ of Prohibition against THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, SECOND DISTRICT, Defendant, and INTERNATIONAL RAILWAY COMPANY, Appellant.

**Public service commission — jurisdiction to consider application for increase in rates of fare on street railway where rates are fixed by contract with municipality — when writ of prohibition properly granted — legislature has constitutional power to modify rates fixed by local franchise.**

1. The provisions of the Railroad Law do not disclose a legislative intent to deal with the matter of rates fixed by agreement between local authorities and a railroad corporation; consequently the public

service commission is unauthorized to nullify conditions attached to such consents by increasing rates, without the consent of the local authorities, and an absolute writ of prohibition is properly granted restraining such commission from acting upon an application made to it to increase rates of fare stipulated by a municipality in 1905 as a condition to its consent to the extension of a street railway and at that time accepted and acted upon by the company. (*Matter of Quinby* v. *Public Service Commission*, 223 N. Y. 244; 227 N. Y. 601, approved and followed.) (Per HOGAN, CARDOZO, ANDREWS and ELKUS, JJ.)

2. The state, acting through the legislature, has by virtue of its police power the right to regulate the fare to be charged by a street railroad corporation and the constitutional right to modify rates fixed in a local franchise. Contracts cannot be made which in any way limit this power. The Constitution gives to a municipality the right to say whether a railroad shall be built in its public streets and may attach to its consent such conditions as it deems necessary and proper so far as it and the railroad are concerned. But if in the exercise of police power the fare is found to be excessive and more than reasonable compensation for the service performed, it may be lowered, or raised, if found to be so low as not to be fair, just and reasonable to the corporation. (Per MCLAUGHLIN, CHASE, COLLIN and ANDREWS, JJ.)

*Matter of City of Niagara Falls* v. *Public Service Comm.*, 190 App. Div. 890, affirmed.

(Argued February 23, 1920; decided July 7, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 5, 1919, which reversed an order of Special Term denying a motion for a writ of prohibition and granted said motion.

The facts, so far as material, are stated in the opinion.

*Morris Cohn, Jr.*, and *Edward E. Franchot* for appellant. The power of the public service commission to authorize an increase above the statutory rate of five cents for local fare upon the local lines of the applicant within the city of Niagara Falls is not limited or prohibited by anything contained in the consents of the local authorities. (*Huntington Case*, 6 P. S. C. Rep. 326; *People ex*

*rel. South Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216; *Matter of International Ry. Co.*, 226 N. Y. 474; *Koehn* v. *P. S. Comm.*, 107 Misc. Rep. 151; *Matter of W. S. R. R. Co.*, 115 N. Y. 442; *Ingersoll* v. *N. E. R. R. Co.*, 157 N. Y. 453; *People* v. *Ebelt*, 180 N. Y. 470; *C. C. Traction Co.* v. *Kingston R. R. Co.*, 154 N. Y. 493.) The public service commission has power to regulate, and, therefore, to increase, fares under the circumstances obtaining in the city of Niagara Falls. (*Matter of International Ry. Co.*, 226 N. Y. 474; *Towle* v. *Remsen*, 70 N. Y. 309; *Rose* v. *Hawley*, 141 N. Y. 376; *Freer* v. *G. S. Sanitarium Co.*, 131 App. Div. 352.) The facts and circumstances in the case at bar are not such as to justify the conclusion that the legislature did not intend to delegate the power of the public service commission to fix local fares in the city of Niagara Falls, particularly on those lines in respect to which the consents for the construction and operation thereof contain no fare limitation. (*V. W. Power Co.* v. *Commonwealth*, 99 S. E. Rep. 723.) A municipality obtains no contractual rights in respect of franchises to public service corporations, as against the sovereign state which may be protected under the Federal Constitution. (*City of Pawhuska* v. *Pawhuska Oil & Gas Co.*, U. S. Sup. Ct. June 9, 1919; *Hunter* v. *Pittsburgh*, 207 U. S. 161; *New Orleans* v. *New Orleans Waterworks Co.*, 142 U. S. 79; *Worcester* v. *Worcester Consol. St. Ry. Co.*, 196 U. S. 539; *Englewood* v. *Denver & S. P. R. Co.*, 248 U. S. 294.)

*Robert J. Moore, Corporation Counsel,* for respondent. The public service commission is not vested with power or jurisdiction to increase rates of fare beyond the maximum amount fixed in the franchise granted by the municipality to the railway company. (*Matter of Quinby* v. *P. S. Comm.*, 223 N. Y. 244; *People ex rel. N. Y. Ry. Co.* v. *P. S. Comm.*, 223 N. Y. 373; *Matter of International Ry. Co.* v. *Rann*, 224 N. Y. 87; *People ex rel. Village of South Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216; *Matter of Inter-*

336   MATTER OF CITY OF NIAGARA FALLS *v.* P. S. COMM.

[229 N. Y.]          Opinion, per. HOGAN, J.          [July,

*national Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474; *Matter of Quinby*, 227 N. Y. 601; *Hannum* v. *United States*, 226 U. S. 436; *Canelli Wine Co.* v. *Tassi*, 88 Misc. Rep. 574.) Where a state statute has conferred upon a municipality the power of making contracts with street railroad corporations, with respect to rates to be charged, both the city and corporation are bound by such contracts. (*Columbus R. P. & L. Co.* v. *City of Columbus*, 249 U. S. 399.)

HOGAN, J.  The appellant, International Railway Company, succeeded to the rights of several railroad companies operating railroads in and through the village of Niagara Falls, the village of Suspension Bridge and the town of Niagara between the two villages, a large portion of which was included in the city of Niagara Falls which was created in March, 1892.

On August 22, 1905, the International Railway Company, desirous of extending its lines in said city, applied to the common council of the city of Niagara Falls for its consent to construct, maintain, operate and use single or double-track extensions of its railroad to be operated by electricity upon and along a number of streets constituting quite extended territory within the city of Niagara. Falls, together with the right to construct, maintain and operate turnouts, crossovers, etc., in connection with its existing tracks.

After due proceedings had, the common council granted consent to such extensions upon certain terms, the important one to be considered here being " Said Company shall not charge more than one fare of five cents for each passenger for any continuous ride or passage over its railroad and extensions within the present limits of the city of Niagara Falls."  The consent was not to be operative unless the company filed its acceptance in writing of the consent and all conditions therein contained in the office of the clerk of the city of Niagara

Falls. The same was accepted and a portion of the extension made.

Upwards of thirteen years thereafter the railway company applied to the public service commission for an order permitting it to increase from five cents to seven cents the rate of fare to be charged passengers upon its road within the city of Niagara Falls. The city of Niagara Falls applied for a writ of prohibition restraining the public service commission from assuming and exercising jurisdiction of the application. The Special Term denied the motion but the order made thereon was reversed by the Appellate Division and the writ granted on the authority of *Matter of Quinby* v. *Public Service Comm.* (223 N. Y. 244).

Our decision in *Matter of Quinby* is controlling here. That case was argued at length March 25th, 1918, by counsel representing the parties directly interested. In addition, by permission of the court, counsel representing the public service commission, first district, the New York State Railways Company and a committee of corporation counsels of the municipalities of the state filed briefs. After a due consideration of the questions presented to this court, a decision was handed down April 5th, 1918, determining that an absolute writ of prohibition should be awarded restraining the public service commission from acting upon the application made to it to increase the rates of fare. We distinctly held in that case, without determining the limits of legislative power, that the provisions of the Railroad Law did not disclose a legislative intent to deal with the matter of rates fixed by agreement between local authorities and the railroad corporation, consequently the public service commission was unauthorized to nullify conditions attached to such consents by increasing rates without the consent of the local authorities.

Eighteen months later a motion was made in this
22

court for the re-argument of the appeal, and it was alleged that our decisions in *People ex rel. Village of South Glens Falls* v. *Public Service Commission* (225 N. Y. 216) and *Matter of International Railway Company* v. *Public Service Commission* (226 N. Y. 474) had in substance overruled our decision in the *Quinby* case. We held to the contrary and not only denied the motion for the re-argument (227 N. Y. 601), but reiterated the views expressed in the original opinion.

In the instant case we are again asked to overrule our decision in the *Quinby* case. Here, as in that case, the question of the power of the legislature to confer upon the public service commission authority to abrogate conditions embodied in the agreement between local authorities and a railroad company is not presented, for the legislature has not undertaken to confer such power but has consistently for three successive sessions since the decision in the *Quinby* case declined so to do. We are now urged to hold that the legislature intended to delegate power to the public service commission to modify the rates prescribed in the contract between the local authorities and the railroad company, against the protest of the municipality, notwithstanding the refusal of three successive legislative bodies to accede to such demand for delegation of power. This we are not prepared to accede to.

The order should be affirmed, with costs.

CARDOZO, J. (concurring). I think this case is controlled by our decision in *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244; 227 N. Y. 601).

I do not say that it is beyond the power of the legislature, either directly or through a commission, to abrogate or modify the conditions of a franchise. If such a question were here, I might agree in that respect with Judge MCLAUGHLIN. Because it is not here, I conceive that we are not at liberty to express an opinion on the

subject. The courts of this state do not act as the advisers of the legislature to define its powers in advance (*Matter of State Industrial Commission*, 224 N. Y. 13). When a statute has been passed, and the legislature has thus construed its powers for itself, we pay much heed to the construction, and nullify the statute only if a case is presented in which " there can be no rational doubt " (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473, 484; *Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351, 362). It is, however, " unnecessary and, therefore, improper " (*Matter of Quinby*, 223 N. Y. at p. 263) to determine the limits of a power which there has been no attempt to exercise. " We deal with the particular instance; and we wait till it arises " (*Matter of State Industrial Commission, supra*).

We held in the *Quinby* case that the instance had not arisen yet. Our ruling was that the legislature had not yet attempted to delegate to the public service commission the power to abrogate conditions in respect of fares, contained in franchise agreements between municipalities and railroads, when the agreements were already in existence at the adoption of the statute. The judges now dissenting attempt to limit the application of that ruling to the city of Rochester, where the controversy arose. No such limitation was suggested as the basis of the decision either when the case was first decided (223 N. Y. 244) or upon the motion for re-argument (227 N. Y. 601) or in other opinions in which its meaning has been restated (*People ex rel. Village of South Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216; *Matter of Int. Ry. Co.* v. *P. S. Comm.*, 226 N. Y. 474). No such limitation, if suggested, would have been reasonable. Section 173 of the Railroad Law has no bearing upon the powers of the commission in respect of rates; it defines the terms upon which franchises are to be granted in the future. The act of 1915 (L. 1915, ch. 359, sec. 7) has no bearing: it withdrew from the commission no power that would

otherwise have been there; indeed, our decision was that in so far as rates were fixed by that act rather than by agreement with the city, the public service commission had power to increase them (227 N. Y. 601, 602). I find myself unable to assent to the conclusion that by the true construction of the *Quinby* case, the city of Rochester has' been singled out as the sole spot within the length and breadth of the state in which the process of the commission will not run, and' in which its mandate must be halted. Such a reading of the opinion under-rates the capacity of the members of the court to give expression to their meaning. Untenable, too, is the suggestion that the *Quinby* case has been overruled by the later cases which have limited it (*People ex rel. Village of South Glens Falls* v. *P. S. Comm.* [Jan. 1919]; *Matter of Int. Ry. Co.* v. *P. S. Comm.* [July, 1919], *supra*). With those cases decided, and sharply pressed upon our notice, we denied, less than nine months ago, a motion for re-argument (*Matter of Quinby*, 227 N. Y. 601, Oct. 21, 1919), and restated our earlier ruling.

The *Quinby* case cannot be distinguished. It has not been overruled. The only question remaining is whether we shall overrule it now. The single point decided was one of statutory construction. Since that decision was announced, three successive legislatures have been asked to confer upon the public service commissions the power which in our view of the existing statute had been there-tofore withheld. In each year the bills embodying the proposed enlargement of jurisdiction failed. The public service commission for the first district has in the meanwhile been reconstituted with its existing powers, and no others (L. 1919, ch. 520; *People ex rel. Outwater* v. *Green*, 56 N. Y. 466, 475; *Fifth Ave. Bldg. Co.* v. *Kernochan*, 221 N. Y. 370, 375). We said that the legislature had a certain intention when it enacted a certain statute. The legislature by what it has done and by what it has refused to do, has said that we read

the intention truly.   We are now asked to say, in despite of all this, that we read the intention wrongly.   The *Quinby* case, kept within the limits of the point actually decided, has entered, I think, into the body of the statutory law through reiterated recognition by this court, and through tacit legislative approval.   If the legislative intention has been misread, the legislature by amendment must say so, and set the reading right.

My vote is for affirmance.

McLAUGHLIN, J. (dissenting).   In May, 1919, the appellant, the International Railway Company, a corporation organized under the Railroad Law, while operating a line of street surface railways in the city of Niagara Falls, filed with the public service commission, second district, a petition showing:   That since January, 1915, the cost of labor and materials had increased, the former upwards of seventy per cent and the latter upwards of one hundred and twenty per cent; that by reason thereof it was, with the existing rate of fare, unable to pay operating expenses and receive any substantial return on an investment of upwards of $1,600,000; that on the 1st of November, 1918, it defaulted in the payment of interest then due on its refunding and improvement bonds; that it was unable to pay the state, county and city taxes long past due upon its property in such city; that it had many financial obligations which it was unable to meet; that it was absolutely necessary for it to receive increased revenue from the operation of its railways in order to maintain itself and render the service to the public for which it was organized.   It, therefore, asked that the public service commission make an order permitting it to charge a fare of seven, instead of five cents, for each adult passenger transported over its lines in said city.   The city interposed an answer to the petition, alleging, among other things, that the fare charged by the petitioner on certain of its lines is fixed

and limited by a franchise and consent given to operate its cars in the public streets, to a rate not exceeding five cents and by reason of that fact the commission did not have jurisdiction or power to fix a rate in excess thereof. The commission fixed a time and place for a public hearing upon the issues raised by the petition and answer. At the beginning of the hearing the city moved to dismiss the proceeding upon the ground that the commission did not have jurisdiction to pass upon the merits of the petition. The motion was denied and the petitioner then offered proof tending to establish the truth of the facts alleged. At the close of its proof the city again moved to dismiss on substantially the same ground as theretofore stated. The motion was again denied and the city thereupon asked for and obtained an adjournment to enable it to apply to the Supreme Court for a writ prohibiting the commission from proceeding further. The application for such writ was thereafter made and denied, an appeal then taken to the Appellate Division, third department, where the order was reversed as matter of law and not as matter of discretion, and the writ of prohibition granted on authority of *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244). This appeal, by permission of the Appellate Division, then followed.

The only question presented by the appeal is whether the public service commission, assuming that the facts set out in the petition are true, had the power and jurisdiction, against the protest of the city, to approve and authorize street railway fares which were in excess of the fares prescribed in a resolution of the common council adopted on the 22d of August, 1905, under which the International Railway Company was granted the right to operate its railroads upon certain public streets. The answer to the question necessarily turns upon the construction to be put upon certain sections of the Railroad Law (Cons. Laws, ch. 49), the Public Service Commissions Law (Cons. Laws, ch. 48) and the resolution referred to.

The International Railway Company was formed by the consolidation of several street surface railways, the franchises of many of which had been obtained prior to the passage of the Railroad Law and contained no provisions limiting the fare to be charged. The city of Niagara Falls was created by chapter 143 of the Laws of 1892, and the Electric City Railway was incorporated in 1904 under the Railroad Law. It obtained from the city consent to, and did thereafter construct and operate a system of railways in certain of its streets. The consent thus obtained limited the fare to be charged to five cents. This railroad was thereafter merged in the International Railway Company.

On the 22d of August, 1905, the International Railway Company obtained from the city of Niagara Falls consent to the construction and operation of a street surface railroad in certain of its streets. The only part, however, which has, up to the present time, been constructed, is a few hundred feet on Eighteenth street between Cleveland and Ontario avenues, to make a connection between the lines of the Electric City and the International Railway Companies.

The resolution of the common council of the city, to which reference has been made, so far as material to the question under consideration, provides:

" *Resolved,* that consent be and is hereby given pursuant to law to said International Railway Company to construct, maintain, operate and use single or double track extensions of its street surface railroad, to be operated by electricity by the single overhead trolley system, in, upon and along the following streets and portion of streets in said city, viz.:" (Here follow the names of the streets, including Eighteenth street between Cleveland and Ontario avenues.)

" *Resolved,* that this consent be given upon the express condition that all of the provisions of Article IV of the Railroad Law pertinent to this consent shall be complied with by said company.

" *Resolved*, that the further terms upon which this consent is given are as follows: * * * Said Company shall not charge more than one fare of five cents for each passenger for any continuous ride or passage over its railroad and extensions within the present limits of said City of Niagara Falls. * * * For the purposes of this subdivision the railroad of The Electric City Railway Company within said City of Niagara Falls shall be deemed an extension of the railroad of International Railway Company and the right to transfer to and from the railroad. of The Electric City Railway Company within the city shall be recognized by said International Railway Company."

The conclusion at which I have arrived renders it unnecessary to examine the different franchises of the railroads merged in the International Railway Company or consents given to build or extend and maintain street surface railways in the public streets of the city, other than the one given and accepted under the resolution of the common council of the city of Niagara Falls quoted. The conditions imposed in granting this franchise had the effect of imposing similar conditions upon the rights theretofore acquired by railway companies to occupy public streets, whether by consent of the municipal authorities, or by the merging of other franchises, irrespective of the time when such rights were acquired. (*Public Service Commission* v. *Westchester Street R. R. Co.*, 206 N. Y. 209; *Parish* v. *Ulster & D. R. R. Co.*, 192 N. Y. 353.) The old franchises were modified or superseded by the new one.

The Railroad Law was passed in 1890 (Chap. 565); the Public Service Commissions Law in 1907 (Chap. 429). Each was revised and amended in 1910 and on the same day became, respectively, chapters 480 and 481 of the Laws of that year. Various provisions of the former Railroad Law deemed to be inconsistent with the Public Service Commissions Law were omitted and the act

throughout bears evidence of an attempt to harmonize and make it consistent with the provisions of the Public Service Commissions Law; *e. g.*, section 8 of the Railroad Law, declaring the power of railroad corporations, begins with the words: " Subject to the limitations and requirements of this chapter and of the public service commissions law." Section 57, dealing with the question of fares, begins with the words: " Subject to the provisions of the public service commissions law." There can be no doubt, when both acts are considered, that the legislature intended by the amendment and revision to eliminate from the Railroad Law such portions as were deemed to be in conflict with the provisions of the Public Service Commissions Law. Any question arising under either of the acts is to be determined by construing both of them together, and when thus construed they constitute, as this court has already determined, one harmonious system applicable to the subject to which both relate. (*People.ex rel. Ulster & D. R. R. Co.* v. *Public Service Commission*, 171 App. Div. 607; affd., on op. below, 218 N. Y. 643.) Both of the acts of 1910 were amended in certain respects in 1911. (Chaps. 418 and 506 of the Laws of that year.) The city, in granting its consent in 1905, to the construction of railroads upon its streets, did so, so far as fares were concerned, subject to the laws of the state as they then existed, or as they might thereafter be changed by the legislature. (*Puget Sound Traction L. & P. Co.* v. *Reynolds*, 244 U. S. 574.)

Before considering the effect of the Railroad Law and the Public Service Commissions Law, as bearing upon the question to be answered, it may not be out of place to state a few general principles of law, the correctness of which I do not believe can be successfully challenged. The state, acting through the legislature, has, by virtue of its police power, the right to regulate the fare to be charged by a street surface railroad corporation. This right or power, whichever it may be called, is an attribute of

the state sovereignty.   It is something which the state cannot sell or give away, either in whole or in part.   It is a power which underlies the Constitution and is predicated upon the law of necessity.   It belongs to the state because it is sovereign, and is a necessity for the existence of the government.   It is something the state cannot surrender because to do so would be to surrender a sovereign power. It is as enduring and indestructible as the state itself. (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225.)   All contracts and property rights are held subject to the fair exercise of this power which embraces, among other things, regulations designed to promote public convenience and general welfare, as well as those in the interest of the public health, morals and safety.   (*Chicago & Alton R. R. Co.* v. *Tranbarger*, 238 U. S. 67; *Atlantic Coast Line R. R. Co.* v. *City of Goldsboro*, 232 U. S. 548.)   Contracts cannot be made which in any. way impair or limit this power, nor can one legislature limit or control a subsequent one in its exercise.   (*Buffalo E. S. R. R. Co.* v. *Buffalo St. R. R. Co.*, 111 N. Y. 132; *Union Dry Goods Co.* v. *Georgia P. S. Corp.*, 248 U. S. 372; *Manigault* v. *Springs*, 199 U. S. 473; *Hite* v. *C., I. & W. R. R. Co.*, 284 Ill. 297; *Puget Sound Traction L. & P. Co.* v. *Reynolds, supra; Chicago Railways Co.* v. *'City of Chicago*, 292 Ill. 190.)

It is suggested, not by counsel, that the state, in the exercise of its discretion, by an act of the legislature in terms so clear and unequivocal as to permit of no doubt, may vest in a municipality the authority to enter into an inviolable contract for a reasonable period regulating the rates to be charged by a public utility by suspending, during such period, its authority to interfere with or change such rates.   This, however, is a question not presented by the appeal and is not considered or passed upon.

The provision in the Constitution of the state that " No law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded

on, and the consent also of the local authorities having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad be first obtained   *   *   * ''   (Art. 3, sec. 18) does not in any way affect the right or power of the state to fix and regulate the fare to be charged by a public service corporation.   This provision of the Constitution is not, either by express language or implication, a surrender by the state to property owners or to the municipalities of the supreme right to govern or regulate the fares or charges of street surface railroad.corporations as the public welfare or interest necessitates or demands.   It is simply a limitation upon the general power of the legislature; a limitation, however, in one respect only, and that is that the legislature shall not pass a law authorizing the construction of a street surface railroad which does not enact that the designated consents shall be first obtained.   The provision has no bearing whatever upon the inherent power of the state to regulate the fare to be charged by a public service corporation.   The power to regulate such fares is essentially a legislative function.   (*Home Tel. & Tel. Co.* v. *City of Los Angeles*, .211 U. S. 265; *Union Dry Goods Co.* v. *Georgia P. S. Corp.*, *supra.*)   The power to thus legislatate, under the Constitution, is lodged in the senate and assembly.   (Art. 3, sec. 1.)   A municipality is a mere agent of the state.   It can only do what the state authorizes it to do.   All the power it has comes from the state and this it may at any time recall.   While the power to regulate fares is a legislative function, the state may delegate its exercise to an agent.   The charter of the city of Niagara Falls will be searched in vain to find any provision where the state has conferred upon it any power in this respect.   Such power, as we shall presently see, has been delegated to the public service commission. The provision of the Constitution quoted gave to the city of Niagara Falls the right to say whether a railroad should be built in its public streets, and if it gave such right, it

might attach to its consent such conditions as it deemed necessary and proper, so far as it and the railroad were concerned. It could require the railroad company to stipulate as to the fares to be charged and unless the stipulation were given, the consent could be withheld. If the condition and proposed consent were accepted by the railroad company, then they became a binding contract between the parties, but not binding in any way upon the state. The constitutional right of the city was to consent or not to consent. With the choice of these alternatives the legislature had no concern and no power to compel action one way or the other. On the other hand, if a fare were fixed in the consent, it was not binding upon the state, since it might at any time be changed. If, in the exercise of the police power, the fare were found to be excessive, and more than reasonable compensation for the service performed, it might be lowered; or raised, if found to be so low as not to be fair, just and reasonable to the corporation. Any condition attached to the consent which was in conflict with the law of the state had no . force or effect so far as the state was concerned. It was simply nugatory. (*People ex rel. South Shore Traction Co.* v. *Willcox*, 196 N. Y. 212.)

If it be true, as indicated, that the state, as an attribute of sovereignty in the exercise of police power, has the right to regulate fares of a public service corporation, with the right to delegate such power to an agent, the inquiry necessarily follows, in order to answer the question propounded, whether it has, in fact, delegated this power to the public service commission. I assert with the utmost confidence that such power has been so delegated.

Section 101 of the Railroad Law of 1890 (Chap. 565) (in force at the time the International Railway Company was incorporated and the city of Niagara Falls created), and which, by the resolution of August 22, 1905, was read into the consent as fully and effectively as though therein set out at length, provided that: " No corporation con-

structing and operating a railroad under the provisions of this article, or of chapter two hundred and fifty-two of the laws of eighteen hundred and eighty-four, shall charge any passenger more than five cents for one continuous ride from any point on its road, or on any road, line or branch operated by it, or under its control, to any other point thereof, or any connecting branch thereof; * * *. The legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter or under the provisions of this article." It will be noted that the legislature "expressly reserves the right to regulate and reduce the rate of fare." This, as it seems to me, clearly indicates that the legislature, in the public interest, intended, in the exercise of its power, to keep control of such fares.

In 1907 the Public Service Commissions Law (Chap. 429) was passed. Section 49 then provided, among other things, as to the power of the commission to fix fares of street surface railroad corporations. Subsequently it was discovered that certain sections of the Public Service Commissions Law and the Railroad Law were somewhat in conflict. For the purpose of making them harmonious, the legislature, in 1910, revised and amended both acts and section 101 of the Railroad Law became section 181, and there was added at the end thereof the words: "And the public service commission shall possess the same power, to be exercised as prescribed in the public service commissions law." Section 49 of the Public Service Commissions Law was also amended and thereafter provided, among other things, that: "Whenever either Commission shall be of the opinion, after a hearing had * * *, that * * * the maximum rates, fares or charges chargeable by any * * * street railroad corporation are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall with due regard

among other things to a reasonable average return upon the value of the property actually used in the public service and to the necessity of making reservation out of income for surplus and contingencies, determine the just and reasonable rates, fares and charges to be thereafter observed and in force as the maximum to be charged for the service to be performed, notwithstanding that a higher rate, fare or charge has been heretofore authorized by statute, and shall fix the same by order to be served upon all common carriers, railroad corporations or street railroad corporations by whom such rates, fares and charges are thereafter to be observed." (Subdivision 1.)

Reading this section of the Public Service Commissions Law in connection with section 181 of the Railroad Law, I am of the opinion that the legislature intended to and did delegate to the public service commission all the power which it had, unless the same were expressly reserved, to lower fares of public service corporations if too high, and to raise them if too low. The language of section 181 is clear: " The Legislature expressly reserves the right to regulate and reduce the rate of fare." The power " to regulate " fares necessarily includes the power to increase the same if inadequate. (*Matter of International Railway Co.* v. *Public Service Commission,* 226 N. Y. 474; *People ex rel. Village of South Glens Falls* v. *Public Service Commission,* 225 N. Y. 216; *People ex rel. N. Y. Steam Co.* v. *Straus,* 186 App. Div. 787; affd., 226 N. Y. 704; *People ex rel. Ulster & D. R. R. Co.* v. *Public Service Commission, supra; Board of Survey of Arlington* v. *Bay State Street Ry. Co.,* 224 Mass. 463.) That this was the sense in which the word " regulate " was used is clearly indicated by the amendment to section 49 of the Public Service Commissions Law, made the same year. These provisions applied to every street surface railroad in the state, unless, as indicated, a specific exception were made.

What is the answer to this conclusion? Two are

suggested.  (1) That it impairs the obligation of the contract entered into in 1905 between the city of Niagara Falls and the railroad company.  But no rule of law is better settled than that a municipality cannot, by a contract with a public service corporation, bar the legislature, so far as fares are concerned, from changing or abrogating such contract when made.  All such contracts are, as heretofore pointed out, made subject to the future action of the legislature.  Both parties contract with reference to the exercise of that power.  (*Buffalo E. S. R. R. Co.* v. *Buffalo St. R. R. Co.*, *supra; Union Dry Goods Co.* v. *Georgia P. S. Corp.*, *supra; Milwaukee Electric R. & L. Co.* v. *Railroad Commission of Wisconsin*, 238 U. S. 174; *City of Worcester* v. *Worcester Consolidated St. Ry. Co.*, 196 U. S. 539.)  (2) That it is in conflict with a recent decision of this court.  (*Matter of Quinby* v. *Public Service Commission, supra.*)  The application of the opinion in the *Quinby* case was, by subsequent decisions of the court, very much limited.  (*People ex rel. Village of South Glens Falls* v. *Public Service Commission, supra; Matter of International Railway Co.* v. *Public Service Commission, supra.*)  In the former this court held that the public service commission had the power to increase a rate fixed in a franchise, and in the latter that it had the power to increase fares fixed by a contract between a municipality and a street surface railroad.  It is true, in the latter case, as appears from the opinion, emphasis was laid, as justifying the conclusion reached, on a provision in the contract (the Milburn agreement, so called) that: " Nothing in this contract contained shall be construed to prevent the legislature from regulating the fares of said companies."  This provision was not, and necessarily could not have been, the underlying basis for the decision.  The city of Buffalo and the street surface railroads could not, by any contract which they made with reference to fares, add to or take from the power of the state, acting through the legislature, concerning that subject.  Whatever power the state had

in this respect was inherent, an attribute of sovereignty, of which it could not be deprived by the contracting parties any more than it could of its own existence.

The state may increase or diminish a rate fixed in a franchise or contract. This is so well settled that the citation of authorities ought not to be necessary. It is the federal rule. (See authorities before cited.) It is the rule established in many of the states. (*In re Searsport Water Co.*, 108 Atl. Rep. 452, and authorities there cited. See, also, authorities cited in 3 A. L. R. 746.)

I assert there is a clear, well-defined and fundamental distinction between the *Quinby* and the instant case. The only question presented in the *Quinby* case was whether the public service commission had jurisdiction to raise the fare of street surface railroads in the city of Rochester from five to six cents, and it was held that it did not clearly appear such power had been given to it. The contract between the street surface railroads and the city of Rochester was entered into in 1890 under the Railroad Law as it then existed, the provisions of which, so far as pertinent, were read into it. The Public Service Commissions Law was not, as previously pointed out, enacted until 1907. Obviously, so far as this contract was concerned, the public service commission had no power to fix fares prior to such enactment. The most that should be claimed was that intermediate the passage of the Public Service Commissions Law and its revision in 1910, the public service commission had power to fix fares. In 1910, by section 173 of the Railroad Law, the power, if any, theretofore given to the public service commission to fix fares was expressly withdrawn. Otherwise there is no meaning to the words: " Nothing herein contained shall be construed  *  *  *  as modifying or affecting the terms of a certain contract bearing date the twenty-fifth day of February, eighteen hundred and ninety, entered into by and between the city of Rochester and the street surface railroad corporation therein named."

If it could be claimed that power was given to the public service commission by the amendment to section 181 of the Railroad Law and section 49 of the Public Service Commissions Law, passed in 1911, to fix fares under that contract, then such power was expressly withdrawn in 1915. (Laws of 1915, chap. 359, sec. 7.) By this act the legislature fixed the fare to be charged by street surface railroads in the city of Rochester and gave to the public service commission power, if two corporations affected by the act could not agree as to the method of division of fares collected, to settle that matter between them. The act was declared constitutional and a proper exercise of legislative power. (*Willis* v. *City of Rochester*, 219 N. Y. 427.) No one, I take it, would claim that *when* this act was passed the public service commission had any power to fix fares in that city. No power, so far as appears, was thereafter given to it. Under such circumstances, it might well be claimed, as stated in the *Quinby* case, that it did not clearly appear the power to fix fares in the city of Rochester had been given to the public service commission. It is true there are expressions in the opinion in that case which, inferentially at least, would seem to be in conflict with the views above expressed, but such expressions were unnecessary to the decision and are not binding upon the court. A judicial opinion, like evidence, is only binding so far as relevant to the decision made. (*Colonial City Traction Co.* v. *Kingston City R. R. Co.*, 154 N. Y. 493.)

I am of the opinion, for the reasons stated, that the public service commission of the second district is invested with power to increase the fares on the petitioner's railroads in the city of Niagara Falls in case the proof, after investigation, shall warrant the conclusion that the present fares are insufficient to yield reasonable compensation for the services rendered and are unjust and unreasonable.

The order of the Appellate Division should be reversed

23

and that of the Special Term affirmed, with costs in this court and the Appellate Division.

CHASE, J. (dissenting). The authority of the public service commission to regulate and increase rates of fare on street surface railroads in the city of Rochester, where such rates had been fixed as a condition of the consent of the local authorities to the operation of the road, was denied in *Matter of Quinby* v. *Public Service Commission* (223 N. Y. 244; S. C., 227 N. Y. 601.)

When the case of *People ex rel. Village of South Glens Falls* v. *Public Service Commission* (225 N. Y. 16) was before this court for consideration, one of the questions discussed was whether the statutes affecting a franchise given to a gas corporation were so different from those affecting a franchise given to a street surface railroad corporation that a decision different from that rendered in the *Quinby* case should be made because thereof. I was of the opinion that where the facts and statutes were similar in other respects the public service commission had the same right and the same right only to regulate and modify the conditions attached to a franchise relating to the price of gas as it had to regulate and modify the conditions attached to a franchise relating to fares to be charged on street surface railroads, and that in view of what had been said in the opinion in the *Quinby* case the matter should be left to the legislature for its determination. The views expressed by me in the *South Glens Falls* case did not meet with the approval of a majority of the court. It was held that the legislature had the power to regulate the price of gas in that case although the franchise fixed a limited compensation to be paid for gas to be furnished pursuant to the franchise and that the legislature had conferred power on the public service commission to regulate such rates.

Although, as shown by Judge MCLAUGHLIN herein, the decision in the *South Glens Falls* case is not in conflict

with what was necessarily decided in the *Quinby* case, it was a substantial disapproval of what was said in the *Quinby* case except so far as it was therein held that the public service commission had no jurisdiction to raise the rate of fare in that particular case.

This court in *Matter of International Railway Company* v. *Public Service Commission* (226 N. Y. 474) held that the public service commission had jurisdiction to regulate rates of fare in the city of Buffalo.   In the opinion in that case it is said, in substance, that in deciding the *Quinby* case the question whether the legislature may wipe out the conditions annexed to the consent of the locality altogether and transform a consent that was qualified into one that is absolute was left open, and added, "We leave it open now."

The decision in the *Quinby* case was made without necessarily determining that the reserve police power of the legislature has been contracted away or that the legislature directly or through the public service commission is without power and authority inherent or otherwise to regulate and modify conditions attached to a consent by local authorities.

In view of the subsequent decisions of this court the decision in the *Quinby* case should not be deemed a precedent except to the extent that the questions involved were necessarily decided in reaching the conclusion that was therein announced.

I concur in the opinion of Judge McLAUGHLIN for reversal.

ANDREWS and ELKUS, JJ., concur with HOGAN, J.; CARDOZO, J., concurs in memorandum, in which ELKUS, J., also concurs; McLAUGHLIN, J., dissents in opinion, in which CHASE, J., concurs in memorandum, and in which COLLIN, J., also concurs; ANDREWS, J., also concurs in so much of opinion of McLAUGHLIN, J., as holds that the legislature has constitutional power to modify rates fixed in the local franchise.

Order affirmed.