In the Matter of the Application of THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY, Petitioner, for a Certiorari Order against WILLIAM G. FULLEN and Others, Constituting the Transit Commission of the State of New York, Being the Metropolitan Division of the Department of Public Service, State of New York, to Review the Determination of the Transit Commission, etc., Respondents.

In the Matter of the Application of THIRD AVENUE RAILWAY COMPANY, Petitioner, for a Certiorari Order against WILLIAM G. FULLEN and Others, Constituting the Transit Commission of the State of New York, Being the Metropolitan Division of the Department of Public Service, State of New York, to Review the Determination of the Transit Commission, etc., Respondents.

First Department, February 14, 1930.

*Alfred T. Davison* of counsel [*Addison B. Scoville* with him on the brief], for the petitioners.

*George H. Stover* of counsel [*Edward M. Deegan* with him on the brief], for the respondents.

*Edgar J. Kohler* of counsel [*Arthur J. W. Hilly, Corporation Counsel*], for the city of New York, intervening party.

FINCH, J. The question here presented is one of law, namely, whether a surface transportation company in the city of New York, bound by a rate prescribed by the Legislature and accepted by the company in its franchise to run a railroad and confirmed by written agreement between the city of New York and the common carrier may without securing an alteration of its rate, pursuant to section 49 of the Public Service Commission Law (as amd. by Laws of 1921, chaps. 134, 335; Laws of 1922, chaps. 153, 582, and Laws of 1923, chap. 891), increase the same by the mere filing of a new tariff schedule pursuant to section 29 of the same law (as amd. by Laws of 1921, chap. 134). The Transit Commission denied the right of the railroad so to proceed, holding that any increase in fare could only be obtained in accordance with section 49 and the conditions provided therein. Hence this application for review.

The railroad seeks to minimize the issue by urging that it amounts to little more than a procedural quibble. Not so, however. There is substance to the position of the Commission. The vitalness of the issue is as great as the difference between a rate in effect and one not in effect with proportionate loss of official control. It means a rate going into effect after adequate official investigation of the facts and approval, in place of a wiping out of all rates fixed by agreement between public officials and common carriers, or rates based upon legislative enactment, and a substitution of rates named by the carriers, with all the advantage to the latter which a rate actually in effect affords. If the railroad could proceed in accordance with section 29, the rates named by it would take

effect unless the Transit Commission is able, within a time which it claims inadequate for the purpose, either to show that the rates are unreasonable or to act arbitrarily in allowing or disallowing the proposed increase or a proportion thereof. The answer is plain. The Legislature has not provided a procedure so unfitted for the purpose or one so suited to bring unnecessary odium on the carrier and a charge of incompetency upon a commission created by it. A procedure adequate to the occasion has been provided by the Legislature in section 49 of the Public Service Commission Law, and not by section 29 under which this application has been brought. If the application had been brought under section 49, the increase could not take effect until it had been allowed by the Transit Commission after an adequate investigation. The Transit Commission has properly decided that the application to them does not lie under section 29, but must be made under section 49 so as to permit of adequate investigation. We are asked to reverse this ruling. We decline to do so.

The Dry Dock, East Broadway and Battery Railroad Company (hereinafter called the Dry Dock Company) on June 22, 1928, filed amended tariff schedules increasing the fare to be charged on its lines after July 24, 1928, from five cents to seven cents.

The Third Avenue Railway Company (hereinafter called the Third Avenue Company) at the same time filed amended tariff schedules fixing a two-cent transfer charge upon transfers from its lines to those of the Dry Dock Company. Inasmuch as the Third Avenue Company merely acted as the agent of the Dry Dock Company in collecting this two-cent transfer charge, it is unnecessary to consider herein the rights of the Third Avenue Company.

The Dry Dock Company is operating a street surface railroad in the city of New York under a franchise originally granted to one Devlin and others in 1860. This franchise prescribed the charging of " the same rate of fare for the conveyance of passengers on said railroad as is now charged by other city railroads in said city." (Laws of 1860, chap. 512.) At that time a fare of five cents was charged by the street railroads. Subsequently extensions to the railroad were granted. In 1866 the railroad was authorized to construct and operate other tracks in connection with those being operated, it being provided, however, that nothing in . said act contained should authorize any increase of fare or additional compensation of any description. By chapter 883 of the Laws of 1866 it was provided that the railroad should not. charge in excess of five cents for the carriage of any passenger over the extension authorized and that it should be required to carry pasengers over

its entire route without charging or receiving any increase over its present rate of fare. In 1913 in consideration of the consent of the city of New York to the construction and operation of another extension, the Dry Dock Company agreed that the rate of fare should not exceed five cents.

The only question in issue between the Transit Commission and the Dry Dock Company is whether an increased fare can be obtained by the common carrier under section 29 of the Public Service Commission Law.

We are thus brought to an ascertainment of the intent of the Legislature as expressed in the Public Service Commission Law. Section 29 and section 49 each provides how a change may be made in a rate of fare, and since they both exist in the same statute, it presumptively follows that they would not be obvious duplications one of the other but would relate to different classes of cases, and this appears to be the fact not only because of the heading of the sections and of the contents but also from the chapter considered in its entirety. If, therefore, the sections are not to be held crude and obvious duplications, what are the classes to which the different procedures apply? The answer is to be found in section 26 which divides rates of fare into those which originate by the filing of schedules by the railroad and those fixed by law, to wit, an act of the Legislature of the State or based upon agreement between the municipality and the railroad. Articles 2 and 3 of the act relate to street railroads, and the sections pertinent to the issue here presented begin with section 26. Section 26 enacts the common-law rule that the rate of every carrier must be just and reasonable and prohibits an unjust rate or one in excess of that fixed by law. Rates are thus divided into two classes, *first*, where the railroad fixes its charge *prima facie*, by filing schedules; and *second*, where rates have been fixed by law, that is, by agreement between municipalities and the railroad, or by legislative act. Section 28 (as amd. by Laws of 1921, chap. 134) then deals with the filing of tariff schedules and the publication thereof. Section 29 then relates to changes thereafter to be made in these schedules and the heading is " Changes in Schedules," and the provision is for changes in the rates " filed and published by a common carrier in compliance with the requirements of this chapter " by filing and publishing new schedules. The section then goes on to provide that unless the Commission shall otherwise order, no change shall be made in a fare which shall have been filed by a common carrier except after thirty days' notice to the Commission and publication for thirty days, and then provides the procedure for the Commission to take when a carrier shall file a new schedule and that the Com-

mission may suspend the operation of the new schedule while it is investigating the reasonableness of the rate, but not for a longer period than 120 days, or a further extension not exceeding six months.

It is apparent that the rates which may be increased by the filing of new schedules under section 29, are such rates only as had their original inception by the filing of schedules. The only limitation upon these rates is that they shall be just and reasonable compensation for the service rendered. (*Smyth* v. *Ames*, 169 U. S. 466.) If the justness and reasonableness of the increased rates proposed by the company are not in question, they become effective as provided by section 29. If questioned, the issue is determined as provided by the section. That section 29 does not apply to rates which have originated otherwise than by the filing of schedules by the companies is shown by the prohibition of section 26 against the filing of schedules in excess of the rates fixed by law. A company may file a schedule fixing an increased rate over a rate theretofore established by schedule upon the ground that the former rate due to changed conditions has become unreasonable and the proposed rate is reasonable and, therefore, lawful, but any schedule so filed which exceeded a rate fixed by agreement or by legislative enactment would be unlawful and in violation of section 26. When we turn to section 49, however, we find that the rates there dealt with are those formally fixed by legislative enactment. With reference to changes in these the Public Service Commission Law provides an elaborate plan with safeguards suited to the protection of the rights of the public including unlimited time as to hearings before such rights formally fixed by law may be abrogated. It is unreasonable to premise that the Legislature intended to permit the same end for which the means was so meticulously provided in section 49, to be summarily accomplished under the provisions of section 29. On the contrary, it is evident that the right given the carriers by section 29 to increase rates by the filing of new schedules applies only to such rates as the carrier under its common-law right might itself fix, subject only to their reasonableness, whereas rates that have been otherwise fixed must be changed as provided by section 49. If the Legislature had intended by section 29 to put into the hands of the railroads the power to increase rates fixed other than by the mere filing of schedules, the enactment of section 49 would have been unnecessary. In reasonable fairness to the Legislature, such obvious duplication should not be ascribed. Moreover, section 29 heretofore has uniformly been construed as not applying to rates that have been fixed by legislative enactment, or agreement, and all attempts to increase such rates have been pursuant to section 49.

The petitioners rely upon the authority of *Public Service Commission* v. *Pavilion Natural Gas Co.* (232 N. Y. 146) to sustain their contention that they may proceed under section 29. That case involved the right of a gas company to increase its rate by filing schedules under subdivision 12 of section 66 of the Public Service Commission Law. The *Pavilion* case is not controlling upon the case at bar because it has been decided that the right granted to the municipality to prescribe reasonable regulations as a condition for its consent to use its streets does not include the right to fix a rate at which gas must be sold beyond the power of the State to alter. (*People ex rel. Village of South Glens Falls* v. *Public Service Commission*, 225 N. Y. 216.)

From the foregoing it follows that the filed schedules prescribing a seven-cent fare were, therefore, properly rejected.

This is the only issue which we are called upon to decide at this time. The city of New York has properly been permitted to intervene as a party herein and has taken the position that not only is there no authority in the railroad to obtain an increase of fare by merely filing schedules under section 29 but that the Transit Commission is without authority to increase fares in the case at bar under section 49 of the act. With this question we are not now concerned as there has not been and may not be an application by the petitioner under section 49 of the Public Service Commission Law. As Judge CARDOZO said in *Matter of City of Niagara Falls* v. *Public Service Comm.* (229 N. Y. 333, 339): "It is, however, ' unnecessary and, therefore, improper' [*Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. at p. 263] to determine the limits of a power which there has been no attempt to exercise. ' We deal with the particular instance; and we wait till it arises' [*Matter of State Industrial Commission*, 224 N. Y. 13]."

The orders of certiorari should be dismissed and the determinations confirmed, with fifty dollars costs and disbursements to the respondents.

DOWLING, P. J., MERRELL and McAVOY, JJ., concur; PROSKAUER, J., concurs in result.

In each proceeding: Order of certiorari dismissed and determination of respondents confirmed, with fifty dollars costs and disbursements to the respondents.