In the Matter of the Application of CONTINENTAL GUARANTY CORPORATION, Respondent, for a Peremptory Mandamus Order against CHARLES L. CRAIG, as Comptroller of the City of New York, and Others, Appellants.

First Department, November 30, 1923.

**Municipal corporations — mandamus to compel comptroller of city of New York to audit and pay claim for manufacture of motion picture film ordered by Transit Commission — comptroller has power under Public Service Commission Law, § 14, to pass on validity of claim — issue is raised as to validity of claim — peremptory mandamus order should not have been granted.**

A peremptory mandamus order should not have been granted on the application of the petitioner to compel the comptroller of the city of New York to audit and pay petitioner's claim for the manufacture of a motion picture film which

was ordered made by the Transit Commission, since the comptroller has the power under section 14 of the Public Service Commission Law to determine what claims are chargeable against the city and a substantial issue is raised as to the validity of the claim in question. Under the circumstances the petitioner should have been given an alternative order or relegated to an action at law in order that the legality of the claim may be determined before the funds of the city are disbursed therefor.

Clarke, P. J., dissents, with opinion.

Appeal by the defendants, Charles L. Craig, as comptroller, etc., and others, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 28th day of May, 1923, commanding the defendants to audit and pay a claim of the petitioner against the city of New York.

*George P. Nicholson,* Corporation Counsel [*Willard S. Allen* of counsel; *John F. O'Brien* and *James P. O'Connor* with him on the brief], for the appellants.

*Leo Oppenheimer* [*Milton P. Kupfer* of counsel], for the respondent.

Martin, J.:

It is set forth in the petition herein that on or about March 4, 1922, the Baumer Films, Inc., a domestic corporation, entered into a contract with George McAneny, Leroy T. Harkness and John F. O'Ryan, as Transit Commission, whereby it was agreed that the said Baumer Films, Inc., should produce and furnish the Transit Commission with one negative and three positive non-inflammable moving picture prints of film in four 1,000-foot reels, which film was to be entitled " Standing Room Only," and to be prepared under the direction and subject to the approval of the said Transit Commission; that the Transit Commission undertook, on behalf of the city of New York, to pay the said Baumer Films, Inc., the sum of $8,000 therefor; that thereafter and prior to April 5, 1922, the said Baumer Films, Inc., produced the moving picture films and delivered the same to the Transit Commission and the said Baumer Films, Inc., has performed all the terms and conditions of the contract on its part; that on or about April 5, 1922, the Baumer Films, Inc., presented a bill for the contract price of the films, to wit, the sum of $8,000, and thereafter the Transit Commission approved the bill in the sum aforesaid and transmitted it to the comptroller of the city of New York for audit and payment, and although duly demanded by the relator and its assignors, the comptroller neglected and refused, and still neglects and refuses, to audit and pay the bill.

It is further alleged in the petition that on or about May 29, 1922, the Baumer Films, Inc., for value, assigned to the Commercial Credit Company any and all claims in respect to the films, and the contract under which the films were supplied, and thereafter and prior to the commencement of this proceeding the Commercial Credit Company assigned the same to the petitioner.

The petition alleges on information and belief that the board of estimate of the city of New York has duly authorized appropriations of public moneys for the performance of its duties by the Transit Commission and the payment of bills incurred by it during the period in which this claim was incurred.

Neither the relator nor the city sets forth the contents or details of the films. It is simply stated that it was a film entitled " Standing Room Only."

The order cannot be upheld, unless the expenditure was within the power and authority of the Transit Commission.

Section 14 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134, § 19) provides as follows: " The salaries of the commissioners, secretary and counsel of the Transit Commission shall be audited and allowed by the State Comptroller, and paid monthly by the State Treasurer upon the order of the Comptroller out of the funds provided therefor. All other salaries and expenses of the Transit Commission shall be chargeable to the city in which such Commission has jurisdiction, and shall be audited and paid as follows: The board of estimate and apportionment or other board or public body on which is imposed a duty, and in which is vested power, of making appropriations of public moneys for the purposes of the city government in such city shall, from time to time, on requisition duly made by the Transit Commission, appropriate such sum or sums of money as such Commission shall certify to be necessary to properly enable it to do and perform, or cause to be done and performed, the duties imposed upon it. Such appropriation shall be made forthwith upon presentation of such a requisition without revision or reduction and without the imposition of any conditions or limitations by such board or body, and such appropriation by it is hereby declared to be a ministerial act.   *   *   * "

In construing the above-given section of the Public Service Commission Law it was held in *Matter of McAneny* v. *Board of Estimate, etc.* (232 N. Y. 377) that the act was constitutional and with reference to the question of proper appropriation it was held that by virtue of the terms of the act the board of estimate and apportionment was obliged to appropriate, when called upon to do so, sufficient funds to pay the salaries and expenses of the Commission

Therefore, the only question now here for decision is whether the comptroller must audit and pay a bill certified as correct by the Transit Commission.

The act further provides as follows: " * * * It shall be the duty of the comptroller or other chief fiscal officer of such city, after such appropriation shall have been duly made, to *audit and pay* the salaries and expenses of such Commission *chargeable to the city*, upon vouchers therefor. * * *."

The comptroller after examination of the claim refused to pay and set forth at length in an answer to the petition his reasons for such refusal.

The court at Special Term held that the opposing answer contained no facts which disclosed the nature of the film and further held that the allegations respecting the illegal purposes for which the films were to be used were mere conclusions. The answer contains many allegations of fact which, if true, would lead to the conclusion that the expenditure was unauthorized.

The answer in part is as follows: " That the alleged contract was in excess of the powers of the Transit Commission and that the payments of municipal funds required thereby is [*sic*] not for a municipal or public purpose. That on or about the time the alleged contract was entered into the persons composing the Transit Commission conceived the design and purpose of influencing public opinion in regard to public and political matters to be voted on at the public election for State and local officers to be held in the month of November, 1922, and to promote the success at such election of the candidate for Governor, by whose appointment the said Commissioners held office, and promote the success of the proposition that the principles in relation to transit facilities in the City of New York were those expressed in Chapter 134 of the Laws of 1921, pursuant to which the said Commissioners were appointed to office, and to promote the success of the political party, in pursuance of whose said policy the said Commissioners would be permitted to continue in office, and to defeat the policy of the political party, in the event of whose success, the said Commissioners would be deprived of their tenure of office; and in pursuance of such design and purpose, and in order to carry the same into effect, the said members of the said Transit Commission caused a play to be written which was to be produced to the public in theatres and elsewhere as a motion picture for such purpose, and having caused the said play or scenario to be written, delivered such scenario to the plaintiff's assignor, Baumer Films, Inc., with the directions to properly make, manufacture and produce a film or moving picture which would portray in visual form the senti-

ments, contentions, arguments and propaganda expressed in the said scenario and intended to be inferred and implied therefrom."

It is apparent from the answer that the comptroller contends that the expenditure is not one chargeable to the city and that the debt is not one which could reasonably be incurred by the Commission. It is quite evident that if the indebtedness was properly incurred by the Commission, the comptroller must audit and pay the same. On the other hand, the comptroller would not be justified in auditing or paying a bill which was not properly incurred by the Commission. The law places a limitation upon the power of the Commission to incur an indebtedness and permits some discretion in the comptroller under the clause that he is to audit. The act does not provide that he must " pay " all expenses certified as correct by the Commission; it provides that he must " audit and pay " the salaries and expenses of such Commission *chargeable to the city.* The comptroller is not called upon to audit and pay every expense incurred by the Commission; only those chargeable to the city.

If the contention of the petitioner is correct, the comptroller must pay, without audit, and perform a mere ministerial act. If it were the intention of the Legislature to take away all discretionary power from the comptroller, in all likelihood it would have so stated by directing that the comptroller pay on a certification by the Transit Commission. Power to audit has been held to carry with it obligations and responsibilities which call for examination, investigation and the use of proper discretion.

In a similar case, in speaking of the term " audit," its purpose and extent, Judge MILLER in the case of *People ex rel. Burnet* v. *Jackson* (85 N. Y. 541, 544, 545) said: " It will thus be seen that the auditor had a duty to discharge which was not merely clerical, but he was authorized to revise and settle accounts, thus vesting him with the right to pass upon their validity and legality. He was not necessarily bound, as a matter of course, to audit and allow all accounts which had been sanctioned by the trustees of the college, but only such as were authorized by law; and the comptroller was to supervise the same. While, then, the auditor and comptroller were bound to audit and allow all valid claims, it was also their duty to reject such as were without any legal authority. Although the fund was raised, placed into the city treasury and set apart for the use of the college (Laws of 1872, chap. 471), as required by law, and the trustees had entire control over it, for legitimate purposes, they had no authority to divert it from the objects for which it was intended. They were not an independent department with power to control and man-

age the fund, except as provided. Not a dollar could be drawn without the audit and approval of the auditor and comptroller, and when the trustees exceeded their authority in allowing the claim in question, it was the duty of the auditing officers to revise and settle the claim by rejecting the same. If the trustees were authorized to allow to the widow or representative of the deceased teacher for services which he had not rendered, there would be no limit to their power in this respect. They might make donations, gifts or gratuities to any or all their teachers and professors, or even for improper purposes, without limit, restriction or restraint. The provision of the charter* to which we have referred was evidently designed to guard against any such misapplication of the public moneys, and to subject the acts of the trustees to the revision and control of the city officers, to the extent of refusing their approval of a claim presented when manifestly illegal. * * * Conceding that the fund is distinct and independent, and devoted to specific purposes, it nevertheless, cannot be drawn except according to law; and when this is not done, the municipal officers would be derelict in their duty if they assented to its unlawful appropriation. They are invested with the authority conferred for the very purpose of restraining illegal appropriations of the public moneys, and are equally responsible with the trustees of the college for any abuse or excess of power. * * *

" It is quite obvious that the trustees of the college exceeded their jurisdiction in allowing the claim, and their act was null and void, and was not obligatory upon the city officers."

In *People ex rel. Grannis* v. *Roberts* (163 N. Y. 70, 78) the court said: " The auditing of an account by the comptroller involves a judicial function. He is required in the language of the books ' to hear, to examine, to pass upon, to settle and adjust.' That function he cannot be required to exercise in any particular way by mandamus, for, as was said by Judge VANN in *People ex rel. Harris* v. *Commissioners* (149 N. Y. 26), ' that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued.' "

In *People ex rel. Harris* v. *Commissioners* (149 N. Y. 26, 30) VANN, J., writing for the court, said: " The primary object of the writ of mandamus is to compel action. It neither creates, nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency. While it may require

---

* See Laws of 1873, chap. 335, § 33, subd. 4; Id. § 34.— [REP.

the performance of a purely ministerial duty in a particular manner, its command is never given to compel the discharge of a duty involving the exercise of judgment or discretion, in any specified way, for that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued. In such cases its sole function is to set in motion, without directing the manner of performance."

In *People ex rel. Francis* v. *Common Council* (78 N. Y. 33, 39) the court, RAPALLO, J., writing said: "The office of the writ of mandamus is in general to compel the performance of mere ministerial acts prescribed by law. It may also be addressed to subordinate judicial tribunals, to compel them to exercise their functions, but never to require them to decide in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions. (*Judges of Oneida Common Pleas* v. *People,* 18 Wend. 92–99, and cases cited.) This principle applies to every case where the duty, performance of which is sought to be compelled, is in its nature judicial, or involves the exercise of judicial power or discretion, irrespective of the general character of the officer or body to which the writ is addressed. A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty, and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be. This principle was applied to an assessor in *Howland* v. *Eldredge* (43 N. Y. 457, 461), and is there recognized as an established and universal rule."

There appears to be a substantial issue here. It is not clear that the expenditure, a moving picture film, was for a public purpose.

Under the decisions governing the right to a peremptory writ of mandamus, it has been held that before a peremptory writ may be granted, it must be shown that there is a clear legal right.

In *Matter of Hamburger* v. *Board of Estimate* (109 App. Div. 427, 428) this court said: "Mandamus proceeds upon the theory of a clear legal right; it is to correct the neglect or refusal of an officer or board to do that which by law it is bound to do. * * * If he has no power to act, the court will not compel him to do that which the law does not."

In *Matter of Eiss* v. *Summers* (205 App. Div. 691, 696) Mr.

Justice Davis, writing for the court, said: "An order of peremptory mandamus will issue only to compel performance of an official duty clearly imposed by law, where there is no other adequate, specific remedy. The duty must be positive, *not discretionary,* and the right to its performance must be so clear as not to admit of a reasonable doubt or controversy."

In *Matter of Haebler* v. *New York Produce Exchange* (149 N. Y. 414, 418) the court said: "Where upon a motion for a mandamus opposing affidavits are read which are in conflict with the averments in the moving affidavits, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and as to any disputed question of fact, the answering affidavits are conclusive and must be regarded as true."

In the case of *People ex rel. Uvalde Asphalt Co.* v. *Grout* (N. Y. L. J. Oct. 11, 1905) Mr. Justice Dowling, sitting at Special Term, said: "The writ of mandamus should only issue to compel the payment of money by the city when the petitioner's right to the payment is clear and unmistakable, and when there is absolutely no defense against payment. It should not issue where it appears that the contract is illegal upon which payment is sought, or where there is grave reason to question its legality. There the petitioner should be relegated to his ordinary remedy by action."

In *People ex rel. Rand* v. *Craig* (231 N. Y. 216) Judge Cardozo said (at p. 221): "We have felt it our duty, however, when obscurity has engendered doubt, to fall back upon the fundamental principle that only clear warrant of law will justify the assumption of a power to control the public purse (*Stetler* v. *McFarlane,* 230 N. Y. 400, 408). That warrant is not here."

Where it appears that there is a real controversy, a peremptory order should be denied. Such a course is found to protect those charged with disbursing the public funds and at the same time bring about a just result.

While the comptroller may not thwart the efforts of the Transit Commission in its endeavor to properly function, at the same time the Commission may not compel the comptroller to pay claims which have been improperly incurred or which are in payment for work done under a contract which was not for a public purpose and chargeable to the city.

Under the circumstances the claimant should have been given an alternative order, or relegated to an action at law, in order that the legality of the claim may be determined before the funds of the city are disbursed therefor.

The order should be reversed, with ten dollars costs and disbursements, and the motion for a peremptory mandamus order denied,

with fifty dollars costs, and an order entered permitting an alter-native order to issue.

DOWLING, FINCH and McAVOY, JJ., concur; CLARKE, P. J., dissents.

CLARKE, P. J. (dissenting):

I dissent. Section 14 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134, § 19) provides that the board of estimate and apportionment shall from time to time, on requisition duly made by the Transit Commission, appropriate such sums of money as the Commission shall certify to be necessary to properly enable it to perform the duties imposed upon it. " Such appropriation shall be made forthwith upon presentation of such a requisition without revision or reduction and without the imposition of any conditions or limitations by such board  *  *  *, and such appropriation by it is hereby declared to be a ministerial act. If such board  *  *  *  shall fail to appropriate such amount as such Transit Commission shall deem requisite and necessary,.such Commission may apply to the Appellate Division of the Supreme Court in the First Judicial Department  *  *  *  for an order requiring such board  *  *  *  to make such appropriation." The constitutionality of the act was upheld in *Matter of McAneny* v. *Board of Estimate, etc.* (232 N. Y. 377, affg. 198 App. Div. 205). The court said: " Was it the duty of the board of estimate and apportionment, upon receiving the requisitions from the Transit Commission, to make the appropriations requested? To this question there can, as it seems to me, be but one. answer. It was its duty to do so. The act so declares. In making the appropriations the board acts ministerially. It has no discretion as to the amount to be appropriated. The purpose of this provision in the act is obvious. It is to prevent the board of estimate and apportionment from defeating the purposes of the act by withholding appropriations.  *  *  *  The purpose of the Commission in asking for the appropriation, or to what use the money appropriated is to be put, does not concern the board. As well might a register of deeds of conveyance refuse to record a deed until the purpose of the one seeking to have it recorded has been disclosed, as for the board of estimate and apportionment, under this act, to refuse to make the appropriation until the purpose of the Commission be disclosed.  *  *  *  " The court also decided that the Transit Commissioners were not city officers. It also said: " The act, in addition to amending the Public Service Commissions Law in certain respects, and in addition to vesting in the Transit Commission certain regulatory functions and all the powers and

duties under the Rapid Transit Act of 1891, as amended,* vests in the Transit Commission, by article 6,† and as a grant of a distinct and independent power, the right and duty to prepare a plan of readjustment for the relief of the emergency which is declared to exist, and which plan shall accomplish as nearly as may be, three purposes (section 106):‡  (1) The combination, rehabilitation, improvement and extension of existing railroads, so that service thereon may be increased and improved to the fullest extent possible.  (2) The receipt, as soon as practicable, by the city of sufficient returns from the operation of the railroads, so that the corporate stock or bonds issued by the city for the construction of rapid transit railroads may be exempted in computing the debt incurring power of the city under the Constitution of the State.  (3) The assuring to the people of the city the continued operation of the railroads at the present or lowest possible fares consistent with the just valuations of the railroads and their safe and economical operation."

The requisition for the appropriation having been honored, as the result of the mandamus order granted by this court and affirmed by the Court of Appeals, the Transit Commission in the performance of the duty imposed upon it to prepare a plan of readjustment, as provided *supra*, in the exercise of the discretion vested in it as a State board untrammeled by any lawful interference by city authorities, made a contract for the taking of moving pictures showing the actual conditions existing under the present passenger transportation systems.  The contract was duly performed and the proper papers and vouchers were duly forwarded for payment.  Thereupon a city official, the comptroller, refused to honor the said vouchers upon the ground that in his opinion the expenditure was not authorized.  The Court of Appeals in the case cited said:  " The purpose of the Commission in asking for the appropriation, or to what use the money appropriated is to be put, does not concern the board " of estimate.  Neither in my opinion does it concern the comptroller.  Section 14 of the Public Service Commission Law which provides that the appropriation shall be made as requisitioned " without revision or reduction and without the imposition of any conditions or limitations," immediately preceding the clause in said section conferring power upon this court to compel the appropriation, continues:  " It shall be the duty of the comptroller or other chief fiscal officer of such city, after such appropriation shall

* See Laws of 1891, chap. 4, as amd.— [Rep.

† See Public Service Commission Law, art. 6, as added by Laws of 1921, chap. 134.— [Rep.

‡ See Public Service Commission Law, § 106, added by Laws of 1921, chap. 134, as amd. by Laws of 1921, chap. 335.— [Rep.

have been duly made, to audit and pay the salaries and expenses of such Commission chargeable to the city, upon vouchers therefor." The phrase " chargeable to the city " is employed because the section provides that the salaries of the Commissioners, secretary and counsel are to be paid by the State Treasurer upon the order of the State Comptroller, while " all other salaries and expenses of the Transit Commission shall be chargeable to the city in which such Commission has jurisdiction." The section then provides the procedure for the payment thereof. It is inconceivable to me that the same section which denies all discretion to the board of estimate and apportionment as to the amount of appropriation and the purposes for which made, can be held to confer it upon the comptroller. In my opinion his power and duty under this act is also purely ministerial. His duty after the appropriation shall have been duly made is to audit, that is, to examine and see from the vouchers presented to him whether the contract was made, whether the proper certificates of performance were attached and whether the amount asked for conforms to the contract and the certificates. It is not within his jurisdiction to determine whether the contract ought to have been made. That palpably is for the Commission to determine and its decision is binding on him. If not, the elaborate scheme evidenced by this act to lodge power and responsibility upon this State board, unhampered by the city authorities, is thwarted and the power deliberately denied to the powerful board of estimate and apportionment is possessed by a single city official and his authority to audit becomes a right to veto. I think the clear meaning of this provision is that it is his duty to audit and pay upon receipt of the proper papers as indicated *supra*. The comptroller in his answer raises no question as to the reasonableness of the contract price, nor does he attack the making of the contract, the proper performance of the work, the due presentation of the bill or its due vouchering according to law.

In my opinion it was the plain duty of the comptroller to audit and pay this claim, and that the order appealed from should be affirmed.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs, and alternative order granted. Settle order on notice.